**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **KIMBERLEY MYERS** | |
| *Plaintiff* | **CIVIL ACTION** |
| v. | **NO.** |
| **THE AGENCY GROUP, LTD,** | |
| **ANGELO C. MOORE,** | ***JURY TRIAL DEMANDED*** |
| **JOHN NORWOOD FISHER** | |
| **FISHBONE**, and | |
| **BEHIND CLOSED DOORS TOURING** | |
| *Defendants*. | |

**COMPLAINT**

**PARTIES**

1.    Plaintiff Kimberley Myers is an individual residing at 3323 Avalon Court, Voorhees, NJ 08043 who is a resident and citizen of the State of New Jersey.

2.    Upon information and belief, Defendant The Agency Group, Ltd ("TAG") is a California entity with its principal offices at 1880 Century Park East, Suite 711, Los Angeles, California 90067 which, at all relevant times, acted as an agent and/or booking agent for musical groups including the group known as Fishbone.

3.    Upon information and belief, Angelo Christopher Moore is believed to be a resident and citizen of the State of California residing at 24354 Hatteras Street, Woodland Hills, California, 91307.  Mr. Moore is the lead singer and a principal of a music band called Fishbone and uses the stage name "Dr. Madd Vibe".

4.    Upon information and belief, Defendant John Norwood Fisher is believed to be a resident

and citizen of the State of California residing at 1659 Ocean Front Walk, Santa Monica California, 90401. Mr. Fisher is the bass player and principal in the music band called Fishbone.

5. Upon information and belief, Fishbone is a Los Angeles California based music band which may be a separate and distinct legal entity. Alternatively, Fishbone may be a partnership, joint venture, de facto partnership, de facto joint venture or other form of association. Upon information and belief, the members and/or principals of Fishbone at the time of the incident at issue in this Complaint included Angelo Moore, Curtis Storey, Rocky George, John McKnight, Dre Gipson, John Norwood Fisher and John Steward.

6. Upon information and belief, Defendant Behind Closed Doors Touring is a general partnership formed between Defendants Angelo Christopher Moore and John Norwood Fisher as general partners each with a fifty percent interest. This partnership is believed to maintain is business address at 1013 Orange Drive, Los Angeles California, 90038. Upon further information and belief, Defendant Behind Closed Doors Touring is also a fictitious name registered in California owned by Defendants Angelo Moore and John Norwood Fisher. Upon further information and belief, at all times relevant to this Complaint, this partnership/fictitious name did business under thc name Fishbone and was formed by Defendants Moore and Fisher to operate the Fishbone's touring.

7. Defendants Moore, Fisher, Fishbone and Behind Closed Doors Touring are referred to collectively as the "Fishbone Defendants."

8. At all relevant times, each of the defendants acted on their own behalf as well as on behalf of the other defendants.

**JURISDICTION AND VENUE**

9.      This court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 as Plaintiff is a resident of New Jersey and the Defendants are all residents of or are incorporated in and/or have principal places of business in California such that there is complete diversity of citizenship and the amount in controversy exceeds $75,000

10.     Venue is appropriate in the Eastern District of Pennsylvania as the performance and occurrences at issue took place in the Eastern District of Pennsylvania, and the harm alleged occurred in the Eastern District of Pennsylvania.

11.     Venue is also appropriate as, upon information and belief, the Defendants regularly conduct business in the Eastern District of Pennsylvania.  For instance, upon information and belief, TAG regularly books its clients at numerous venues in the Eastern District oF Pennsylvania and acts on its own behalf and on behalf of its clients to propose, negotiate and execute contracts for performances in the Eastern District of Pennsylvania and derives revenue from these performances.

**FACTS**

    **A.     FISHBONE**

12.     The Fishbone Defendants claim on their MySpace website that Fishbone"is an alternative rock band that plays a fusion of ska, punk rock, reggae, funk, heavy metal and more. The band was formed in 1979 in the ghettos of South Central Los Angeles by Angelo Moore, also known as 'Dr. Madd Vibe'... [and] John Norwood Fisher (bass) [among others]."

13.     According to Fishbone's website, "the band's influence on pop-culture permeates to this day

as some music icons and historians even credit frenetic frontman Angelo Moore as one of the first performers to 'stage dive' and 'crowd surf' during legendary performances in the mid-eighties garage punk clubs, as the band and their chaotic and colorful energy would incite some of the very first crowd surfing episodes in LA clubs, antics which have since become embedded as a staple of punk rock subculture." and that Angelo Moore is "still stage diving and crowd surfing like it was 1985!"

14.    "Stage diving" by Fishbone involves a member of the band diving off the stage or an elevated platform into the audience.  Stage diving often leads to "crowd surfing"  with the hope that members of the audience will catch the performer and then pass the performer with their hands above their heads around the audience.

15.    Throughout Fishbone's existence, Mr. Moore has and continues to stage dive and crowd surf at pretty much every performance.

16.    During Fishbone performances, Mr. Moore does not announce to the audience that he is going to stage dive or give warnings that he is going to stage dive as he believes that this would make the performance less exciting.

17.    Upon information and belief, at all times relevant hereto, Mr. Moore and the other Defendants knew that there is always a risk that an audience member could be hurt from Fishbone's stage-diving.

18.    During a deposition in another action, Mr. Moore confirmed that prior to the incident at issue in this Complaint, audience members have been injured from his stage-diving, explaining that when "I jump out there, usually if somebody gets hurt, it's like you can see in the audience if somebody gets hurt, there's a dead spot, you get a lot of security surrounding that

spot".  When asked how often this happens, Mr. Moore stated "[i]ts hard to tell, man because its just chaos.  Chaos is a big part of the phenomenon that goes on." Mr. Moore also described stage-diving as an "extreme activity" meaning that it involved "chance, trust and risk" and that  "every couple of months" an ambulance is needed for someone at a Fishbone performance.

19.    Upon information and belief, prior to the incident at issue in this complaint, one or more of the Fishbone Defendants including Mr. Moore was previously sued by Janine Shockley who was injured by Mr. Moore's stage diving during a performance in Seattle Washington in or about November 2003. As part of a settlement with Ms. Shockley, Mr. Moore wrote Ms. Shockley a letter dated January 17, 2006 stating as follows:

> First, I'm very sorry that you came to one of my shows and had an unpleasant experience, as it is my understanding that you were hurt during the performance within the mosh pit. I understand and can appreciate your concerns that there are potential dangers involved with participating within such an environment.
>
> Punk, ska, and funk are all part of the underground subculture and have always been a host for expression. Your concerns are mine as well, so please understand that my artistic role (which has helped the music industry progress and allow free expression) are in no ways meant to be harmful towards you or anyone else that wishes to participate in our musical offering.
>
> This incident has made an impact in my thought process, so I wanted you to know that I am not making this apology in vain. I promise you that in consideration of the safety of others. and in the event that I get pulled into the show, I will look into a softer footwear alternative.
>
> Finally, while most venues provide ample areas for audience members who do not want to be subjected to the possibility of harm, I will also suggest to the various promoters that choose to book us or any other musical act of this nature, to post a sign advising those that wish to participate in the mosh pit/show, that there could be dangers and they should position themselves appropriately.

Again, our deepest apologies and I hope we can put these matters to rest.

20.    Upon information and belief, each of the defendants was aware of this letter and the undertaking to make sure that the promoters and venues that book Fishbone are advised to warn audience members about the dangers of stage diving.

## B.    THE AGENCY GROUP

21.    Upon information and belief, at all relevant times, TAG has engaged in the business of procuring, offering, promising, or attempting to procure employment or engagements for performance artists including the Fishbone Defendants and is commonly referred to as a talent agent or booking agent.

22.    According to TAG's website, it is "one of world's leading booking agencies" representing a "wide variety of genres including rock, metal, reggae, folk, R&B, hip-hop, classical and children's entertainment."

23.    Upon information and belief, TAG represents approximately 2,000 artists (including the Fishbone Defendants) supported by 150 or more employees in five offices including offices in New York and Los Angeles.

24.    According to TAG's website, it has offices located throughout the world which "allows The Agency Group to easily offer global representation to acts that seek it and book as many markets as possible."

25.    Upon information and belief, TAG is required to be a licensed talent agent under California's Talent Agent Act, Ca. La. Code §1700 et seq ("TAA") and is required to have a written contract with each artist whom they represent including Fishbone pursuant to TAA § 1700.23

such that the form of the contract is pre-approved by the Labor Commissioner of the State of California.  Accordingly, upon information and belief, TAG had a written contract with one or more of the Fishbone Defendants which required TAG, *inter alia*, to find and book performance opportunities for Fishbone.

26. Upon information and belief, prior to the performance at issue in this complaint, TAG contracted with one or more of the Fishbone Defendants to promote Fishbone and be responsible to arrange for performances by Fishbone throughout the United States including in the Eastern District of Pennsylvania.

27. Accordingly, at the all times relevant to this Complaint, including the booking at the Venue during which Plaintiff was injured, TAG was responsible to arrange and negotiate performance opportunities for the Fishbone Defendants.

28. In interviews, Neil Warnock, TAG's founder and CEO has stated that:

   a. TAG's "job as an agent is to create an environment where they [performers] go to work, let it be an arena or stadium.  All of that is looked after us at the Agency [Group].";

   b. "Everything about the show is researched diligently";

   c. "Working live [i.e. giving live performances] can depend on may aspects ... different artists will work in different venues ... for different reasons.  We even have so many different musical genres, like heavy metal bands work in different venues than high tech artists will work in specific theaters or specific festivals.";

   d. TAG "bring[s] a personal service to performing in America and elsewhere.  The agent who signs the artist looks after the artist for the whole of their career" and is

therefore intimately familiar with the individual artists they represent;

e. At TAG "there is always somebody, somewhere who has been in all the buildings around the world and who has worked with all the promoters around the world." such that TAG is also familiar with the specific venues where they book their performers.

f. That TAG's "job is to investigate which promoters, which buildings" are appropriate to book each of their clients.

29. Upon information and belief, TAG represents multiple musical performers that engage in stage diving and other dangerous and reckless conduct:  For instance:

a. TAG represents and books a well known band, the *Butthole Surfers*, known for stage diving and other reckless conduct. TAG's *Butthole Surfer* webpage promotes the band as follows:

> Arguably the most infamously named band in the annals of popular music — for years, radio found their moniker unspeakable, and the press deemed it unprintable — Butthole Surfers long reigned among the most twisted and depraved acts ever to bubble up from the American underground. Masters of calculated outrage, the group fused the sicko antics of shock rock with a distinct and chaotic mishmash of avant-garde, hardcore, and Texas psychedelia

b. TAG represents and books a well known band, *Exodus*, known for violent stage diving and other reckless conduct. TAG's *Exodus* webpage promotes the band as follows:

> "I'm not happy unless I see someone out there in the [mosh] pit, bleeding and smiling" [says Gary Holt, lead singer of Exodus].
> ***
> [the band's performance] will not only ensure a dramatic rise in the National Blood Loss Index of countless mosh pits around the world, but will transform them all into Eternal Gardens of Bleeding.  Can you picture Gary Holt smiling as he sees the blood splatter before

him?

c.  TAG represents and promotes *Trash Talk*, a band well known for stage diving.

   TAG's *Trashtalk* webpage promotes that the band as follows:

   > As 2005 wound down, Sacramento thrashers, Trash Talk, clenched their fists and wound up. They've been swinging at the world ever since. Formed in the modern age of watered down more pop than punk, punk rock, these Californian heathens conjure memories of the genre's heyday, when audiences demanded aggressive music with a live show to match and bands delivered. Trash Talk delivers. With stage displays firmly rooted in chaos, an arsenal of releases to back it up, and fervent touring, Trash Talk has continually astonished loyal fans and newcomers alike.

d.  TAG's website promotes a band known as *Chiodos* and TAG's *Chiodos* webpage promotes that the band engages in stage diving and crowd surfing as follows:

   > Whether it's Owens taking his nightly walk across the top of the crowd– as he did on the band's Fall '07 sold-out headlining trek– or guitarist Pat McManaman diving from the balconies of assorted venues, the fear that a member of the band might fall and break a limb has been alleviated by the complete and utter trust Chiodos has in its fans. After all, the rock & roll acrobatics are all part of the group's ultimate goal: to give Chiodos fans a performance that will stay with them. "We're giving our fans an experience, a memory," Brad explains. "So if Craig goes walking out on top of the crowd, or if one of us climbs up onto something, it's kind of thrilling. It gives people something to talk about and remember."

e.  TAG's webpage for *Fishbone* as of February 2010 stated, inter alia, that:

   > Angelo Moore hasn't slowed down one bit! Be ready for wailing vocals, an array of saxophones and percussion and even Theremin to wow the crowd night after night. Still dancing and stage-diving, Angelo's got enough energy to fill the entire room himself.

f.  TAG represents and promotes *Cancer Bats*, a band well known for violent performances. TAG's *Cancer Bats* webpage promotes that the band as follows:

9

> The Cancer Bats have come to destroy. Fueled by a burning desire to rage harder, play louder and have more fun than any other band, Cancer Bats mix hardcore, southern metal, and punk rock into a lethal rock and roll explosion. ... Show after show, from coast to coast, the Cancer Bats, whose explosive live shows inspire floor punching, windmills, and arm spinning, had begun to establish their own devoted legion of fans.

30. Upon information and belief, in the course of its representation of performers, TAG has a duty to (and in some cases unrelated to the instant actions does) advise venues that the performers booked by TAG (for whom TAG is acting as an agent) engage in stage diving so that the venue will provide appropriate warnings to audience members and/or cause the there to be a safety precautions (such as creation of specially designated areas for stage diving called "mosh pits") to protect those members of the audience who do not want to be subject to stage diving.

31. Upon information and belief, at all times relevant hereto, TAG knew or should have known that stage diving is a dangerous activity that can lead to serious injury to unsuspecting audience members.

32. Upon information and belief, TAG was or has been an agent for Fishbone for a period of years and was intimately familiar with their performances including the fact that Fishbone the performances almost always involve unannounced stage diving which place members of the audience at risk of sudden, severe and unannounced physical contact and harm from the stage diving performer.

33. Upon information and belief, at all relevant times TAG was aware (or should have been aware) that:

a.      members of Fishbone regularly stage dive;

b.      That stage diving was inherently dangerous to audience members.

c.      Mr. Moore does not announce to the audience that he will stage dive before leaping into the audience;

d.      That Fishbone was previously sued for injuries caused by stage diving;

e.      That members of the audience were at risk of injury from the reckless misconduct of the Fishbone Defendants;

f.      That after the Shockley lawsuit, Fishbone had promised to have its agents warn promoters and venues and that TAG should be doing so; and

g.      That venues and promoters expect and relied upon TAG to notify them that Fishbone engages in stage diving so that they can know well in advance of the performance at the time of booking of the risk of stage diving and decide whether or not to book the performer and/or whether to put into place any safety precautions.

34.    Upon information and belief, at all relevant times TAG was also aware that audience members, including Ms. Shockley, have been injured by Fishbone stage diving.

### C.    TAGS BOOKINGS AT THE WORLD CAFE LIVE

35.    The World Cafe Live is a contemporary music venue in Philadelphia known to cater to an older mellower crowd who attend folk, jazz, soft rock and other similar non-physical performances.

36.    Upon information and belief, in the thousands of shows performed at the World Cafe Live

prior to the performance in question in this case, there had never been an incident of stage diving at the World Cafe Live.

37. Upon information and belief, prior to the performance at issue in this Complaint, The World Cafe Live frequently booked shows through TAG involving performers who did not engage in stage diving or other recklessly physical misconduct.

38. TAG knew or should have known that the World Cafe Live was not a place where stage diving had previously occurred or was expected to occur.

39. Amongst the bands represented by TAG is the English Beat, a band which does not engage in stage diving or similar conduct.

40. In late 2009, TAG conceived of a tour for the spring of 2010 to be called the Spring Skaward Tour headlining the English Beat with Fishbone and another band named Outlaw Nation as opening acts.

41. Upon information and belief, TAG approached the World Cafe in or about November 2009 offering a performance of the Spring Skaward Tour including the English Beat and Fishbone at the World Cafe Live to take place on or about February 23, 2010, and promoting the Tour as being a good fit with the World Cafe Live venue and audience.

42. At no time did TAG explain to the World Cafe Live that Fishbone was likely to engage in stage diving. Moreover, at all relevant times, TAG knew or should have known that the World Cafe Live management would have needed such information so as to, *inter alia*, take appropriate safety precautions, including, prohibiting such conduct, creating designated areas for stage diving and crowd surfing and/or providing patrons with warnings prior to the performance that such misconduct might take place so that the patrons could choose to locate

themselves outside of the zone of danger.

43. As part of its promotion of the Spring Skaward Tour:

    a.      on or about November 9, 2009, TAG presented the World Cafe Live a contract on TAG letterhead for a performance by the English Beat on February 23, 2010. This contract required some payments to be made to TAG. Included in this contract were addenda and a rider specifying many aspects of the performance. The contract however, failed to alert the World Cafe Live to the possibility of any stage diving during the Spring Skaward Tour;

    b.      on or about December 1 2009, TAG presented the World Cafe Live a contract on TAG letterhead for a performance by Fishbone on February 23, 2010. This contract required some payments to be made to TAG. Included in this contract were addenda and a rider specifying many aspects of the performance. The contract however, failed to alert the World Cafe Live to the possibility of any stage diving during the Spring Skaward Tour; and

    c.      on or about November 9, 2009, TAG presented the World Cafe Live a Change Memo to the English Beat contract adding Outlaw Nation to the program on February 23, 2010. Once again, this addenda failed to alert the World Cafe Live to the possibility of any stage diving during the Spring Skaward Tour.

44. Upon information and belief, prior to February 23, 2010, TAG was aware that Fishbone was stage diving at various venues on the Spring Skaward Tour and would stage dive at the World Café Live performance on February 23, 2010l, but never advised the World Cafe Live to expect any such misbehavior.

45. Upon information and belief, TAG intentionally, purposefully, wantonly, willfully, recklessly and/or negligently injected Angelo Moore and Fishbone's stage diving — an inherently dangerous force — into the stream of commerce and to perform at the World Cafe Live, for its own economic benefit without any warnings to the venues or audience members.

46. It was entirely foreseeable to each of the defendants that audience members, such as Plaintiff, could be injured by stage diving, failure to protect against stage diving and/or failure to warn that there might be stage diving.

### D.      THE FEBRUARY 23, 2010 PERFORMANCE

47. On or about February 23, 2010, Plaintiff Kimberly Myers attended a musical performance at the World Cafe Live venue in Philadelphia Pennsylvania which included a performance by Fishbone.

48. Plaintiff was a business invitee of all of the Defendants.

49. Prior to this musical performance, Plaintiff had never attended a Fishbone performance and was not familiar with their music, stage craft or performances.

50. Part of the way through the Fishbone performance, Defendant Angelo Moore, whose stage name is Dr. Madd Vibe, negligently, recklessly and/or intentionally dove off the elevated stage into the audience in the area near Plaintiff.

51. Plaintiff had no prior warning or understanding that a member of Fishbone would dive off the stage into the audience.

52. As a result of this conduct, Plaintiff suffered serious injury including, but not limited to, a fractured skull, a broken clavicle (collar bone), perforated eardrum, hearing loss,

autoimmune problems, lacerations, headaches and other physical and mental injuries. Some or all of these injuries may be permanent in nature.

53.   After injuring Plaintiff, none of the Defendants including Mr. Moore apologized to Plaintiff. Instead Fishbone continued its performance as if nothing had happened, even though Plaintiff was taken from the scene by ambulance.

54.   In addition to serious bodily injury, Plaintiff has suffered other injuries and losses including, but not limited to, loss of income, loss of earnings potential, embarrassment, humiliation, scarring, loss of life's pleasures and other damages.

55.   Shortly after the performance, Neil Sulkes, general manager of World Cafe Live, stated to the *Philadelphia Daily New* that no performers had ever previously stage-dove at the World Cafe Live, that "We certainly do not condone and do not approve of stage-diving by the artists on our stage and we certainly didn't have any advance notice that he'd jump off the stage," adding that "we feel horrible this young lady got hurt. We don't condone it."

56.   The Fishbone Defendants continue to stage dive and crowd surf and use this reckless conduct as a means to promote themselves.

57.   Upon information and belief, Fishbone's booking agent, TAG, actively promoted Fishbone and caused it to be booked for the February 23, 2010 performance at the World Cafe Live.

58.   Upon information and belief, Fishbone's booking agent, TAG, intentionally profited from the Fishbone Defendants' unsafe conduct as well as the World Café Live booking on February 23, 2010.

59.   None of the Defendants posted, or cause to be posted, any warnings or otherwise acted to alert the Plaintiff, or any member of the audience, that there may be any stage diving, crowd

surfing or other dangerous activity at the Fishbone performance.

60. None of the Defendants took any precautions to protect Plaintiff or any member of the audience from injury caused by stage diving, crowd surfing or other dangerous activities at the Fishbone performance.

61. Notwithstanding the foregoing, and in negligent, reckless, wanton, willful or intentional disregard of the life, health and safety of their business invitees, the Defendants, jointly and severally, failed to make any effort to alert or otherwise warn patrons at the February 23, 2010 performance, including Plaintiff, that they would be exposed to danger resulting from a performer diving off an elevated stage into the audience where the plaintiff could not escape harm from such activity.

### COUNT I
### NEGLIGENCE

### PLAINTIFF v. ALL DEFENDANTS

62. The foregoing and subsequent paragraphs are incorporated herein by reference as if set forth fully herein.

63. Upon information and belief, stage diving and/or crowd surfing is an inherently dangerous activity.

64. Each of the defendants had a duty to make sure that persons attending Fishbone performances (including Plaintiff) as well as the venues (including the World Cafe Live), were advised that the Fishbone performance being booked through TAG would include stage

16

diving and that audience members may be at risk of harm from such stage diving.

65. Each of the defendants had a duty to advise the World Cafe Live management, well before the night of the February 23, 2010 performance, that the Fishbone performance being booked through TAG would include stage diving and that audience members may be at risk of harm from such stage diving so that the World Cafe Live could take appropriate action prior to the night of the performance in question to either prohibit such misconduct, ensure that adequate warnings were provided to the audience and/or to put into place safety precautions (such as creating a barricaded mosh pit) so that persons who did not want to be subjected to harm from stage diving could be located in a safe danger free area.

66. Defendant Moore acted negligently, recklessly and/or intentionally when he dove off the elevated stage into the audience in the area near Plaintiff in order to crowd surf.

67. Each of the Defendants acted negligently, recklessly and/or intentionally when they devised, participated in, and promoted a performance to include stage diving and crowd surfing.

68. Each of the Defendants failed to provide, or cause to be provided, any warnings to unsuspecting audience members such as Plaintiff that there would be stage diving and crowd surfing.

69. Each of the Defendants failed to provide, or cause to be provided, effective warning to the World Cafe Live and audience members that there would be stage diving and crowd surfing or that audience members would be subjected to a risk of harm during the Fishbone performance.

70. Each of the Defendants failed to undertake, or cause to be undertaken, any precautions or safety measures to protect unsuspecting audience members such as Plaintiff from injury from

stage diving and crowd surfing.

71. Defendants failed to warn Plaintiff (or cause Plaintiff to be warned) of the danger of stage diving.

72. Defendants failed to protect Plaintiff (or cause Plaintiff to be protected) from the danger of stage diving.

73. Defendants failed to guard (or cause Plaintiff to be guarded) against the danger of stage diving.

74. As a result of Defendants' misconduct, Plaintiff suffered injury.

75. The Defendants' conduct in having performances which include stage diving and crowd surfing represents a reckless, wanton or willful indifference to the health, welfare and safety of unsuspecting audience members and is outrageous.

76. Upon information and belief, publicly engaging in an inherently dangerous activity such as stage diving and/or crowd surfing without procuring liability insurance represents a reckless, wanton or willful indifference to the health, welfare and safety of audience members and is outrageous.

77. But for the Defendants' negligent, reckless, intentional, wanton and/or willful misconduct, Plaintiff would not have suffered injury.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages from the Defendants jointly and severely each in an amount in excess of $75,000.

## COUNT II
## ASSAULT AND BATTERY

### Plaintiff v. Moore, Fisher, Fishbone and Behind Closed Doors Touring

78.  The foregoing and subsequent paragraphs are incorporated herein by reference as if set forth fully herein.

79.  Defendant Moore acted negligently, recklessly and/or intentionally when he dove off the elevated stage into the audience in the area near Plaintiff in order to crowd surf.

80.  Plaintiff had no knowledge that Defendant Moore would stage dive or crowd surf.

81.  Plaintiff did not consent to being touched by Defendant Moore.

82.  Plaintiff was injured as a result of Defendant Moore diving into the audience from the elevated stage in order to crowd surf.

83.  Plaintiff had no advance knowledge that Defendant Moore would attempt to dive into the audience and was unable to avoid being injured.

84.  Defendant Moore's conduct was negligent, reckless and/or intentional.

85.  Defendant Moore's conduct was outrageous.

86.  The other members of Fishbone and Behind Closed Doors Touring as well as TAG knew that Defendant Moore would be stage diving and crowd surfing and aided, abetted and encouraged this behavior and they were motivated by their own personal and pecuniary interests.

87.  The other members of Fishbone promoted Moore's stage diving and crowd surfing.

88.  The Fishbone Defendants are responsible for the actions of Defendant Moore.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages from the Defendants

jointly and severely each in an amount in excess of $75,000.

## COUNT IV
## CIVIL CONSPIRACY
## and/or CIVIL AIDING AND ABETTING

### Plaintiff v. All Defendants

89.  The foregoing and subsequent paragraphs are incorporated herein by reference as if set forth fully herein.

90.  Each of the above named defendants performed tortious act(s) in concert with other pursuant to a common design with the other Defendants.  Such conduct includes, but is not limited to, planning to have a performance by Fishbone wherein Mr. Moore would stage dive from the elevated stage onto members of the audience creating a grave risk of serious injury to audience members without giving any warning (or causing such warning to be given) to the audience or Plaintiff.

91.  Additionally, and/or alternatively; each Defendant had knowledge that another Defendant's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the other Defendant;

92.  Additionally, and/or alternatively; each Defendant gave substantial assistance to other Defendant(s) in accomplishing a tortious result and such Defendant's conduct, separately considered, constituted a breach of duty to Plaintiff.

93.  Plaintiff was injured by the Defendants' conduct including their concerted actions.

94.    Defendants misconduct is actionable under the Restatement (Second) of Torts § 876.

WHEREFORE, Plaintiff requests compensatory and punitive damages against each of the defendants jointly and severally, in an amount in excess of $75,000.

NEIL E. JOKELSON & ASSOCIATES, P.C.


BY:    _____/s/_____

NEIL E. JOKELSON, ESQ Atty I.D. #02486
DAVID E. JOKELSON, ESQ, Atty I.D.#73734
DEREK E. JOKELSON, ESQ, Atty I.D.#81047
230 South Broad Street, 10th Floor
Philadelphia, PA 19102
Telephone:  (215) 735-7556
Facsimile: (215) 985-0476