IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIMBERLEY MYERS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | NO. 12-597 |
| v. | : | |
| | : | |
| **ANGELO C. MOORE, JOHN NORWOOD** | : | |
| **FISHER, and FISHBONE,** | : | |
| Defendants. | : | |

**DuBois, J.**                                                                 **December 22, 2014**

# M E M O R A N D U M

## I.   INTRODUCTION

This is a personal injury case. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. This case arises out of an incident that took place at a performance by the musical group Fishbone on February 23, 2010, at the World Café Live venue in Philadelphia, Pennsylvania, during which Fishbone's lead singer, defendant, Angelo C. Moore ("Moore"), dove into the crowd, knocked plaintiff, Kimberly Myers, to the ground, and caused serious injuries.

Presently before the Court is defendant Moore and defendant John Norwood Fisher's ("Fisher") Motion to Vacate Default Judgment, seeking vacatur of the default judgments entered against them on February 12, 2014. For the reasons that follow, the Court grants defendants' Motion to Vacate Default Judgment.

## II.   BACKGROUND

### A. Procedure History

In 2010, plaintiff filed suit in this Court (the "first action") against (1) Moore, (2) Fisher, who is Fishbone's bass player, (3) Fishbone, (4) Silverback Artist Management ("Silverback"), which is Fishbone's manager, (5) the Trustees of the University of Pennsylvania, (6) Behind

1

Closed Doors Touring,[1] (7) Hajoca Associates, L.P.,[2] and (8) Real Entertainment — Philadelphia, Inc.,[3] for negligence in producing the February 23, 2010 concert at which plaintiff was injured and in failing to warn the audience that the concert would feature "stage diving." See Second Am. Compl., Myers v. Moore, No 10-cv-824 (E.D. Pa. Dec. 20, 2010). Plaintiff also asserted claims of civil conspiracy against all defendants and assault and battery against Moore, Fisher, Fishbone, and Behind Closed Doors Touring.

Ultimately, plaintiff reached settlements with Silverback, the Trustees of the University of Pennsylvania, and Real Entertainment — Philadelphia, Inc. (the "settling defendants"). At plaintiff's request, the Court dismissed plaintiff's claims against the non-settling defendants, Moore, Fisher, Fishbone, Hajoca Associates, L.P., and Behind Closed Doors Touring, without prejudice. Defendants, Moore and Fishbone, were represented in the first action, but defendants, Fisher and Behind Closed Doors Touring, were not represented in those proceedings.

On February 3, 2012, plaintiff brought the present action against (1) Moore, (2) Fisher, (3) Fishbone, (4) Fishbone's agent, The Agency Group, Ltd.,[4] and (5) Behind Closed Doors Touring, for negligence and civil conspiracy. Plaintiff also asserted claims of assault and battery against Moore, Fisher, Fishbone, and Behind Closed Doors Touring. Moore and Fisher failed to respond to the Complaint. Accordingly, a default was entered by the Clerk of Court against them on September 4, 2012. See Fed. R. Civ. P. 55(a). Although Fishbone failed to respond to the Complaint, plaintiff did not seek a default or a default judgment against it.

---

[1] Behind Closed Doors Touring is a general partnership formed by Moore and Fisher to operate Fishbone's tours.
[2] Hajoca Associates, L.P. subleases space to Real Entertainment — Philadelphia, Inc. for the operation of World Café Live.
[3] Real Entertainment — Philadelphia, Inc. is the owner and operator the World Café Live.
[4] On July 12, 2012, plaintiff stipulated to the dismissal with prejudice of her claims against The Agency Group, Ltd.

The matter was presented to the Court on Motion for Default Judgment Against Defendants John Norwood Fisher and Angelo C. Moore pursuant to Federal Rule of Civil Procedure 55(b). By Order dated April 4, 2013, the Court granted plaintiff's Motion for Entry of Default Judgment Against Defendants John Norwood Fisher and Angelo C. Moore.[5]

On May 6, 2013, the Court conducted a hearing to assess the damages that should be awarded to plaintiff. Notwithstanding notice to Moore and Fisher, they did not appear at the hearing. Following the hearing, plaintiff submitted Proposed Findings of Fact and Conclusions of Law and additional briefing, requested by the Court, on the issue of whether any assessment of damages against Moore and Fisher in the present action should be reduced by the amount of the settlements between plaintiff and the settling defendants in the first action.

By Order dated February 12, 2014, the Court entered judgment in favor of plaintiff against defendants Moore and Fisher, jointly and severally, for compensatory damages, in the sum of $1,117,145.93. The Court further ordered judgment in favor of plaintiff and against Moore, individually, for punitive damages, in the sum of $250,000.

On March 12, 2014, defendants Moore and Fisher filed a Motion to Vacate Default Judgment, requesting that the Court vacate the default judgments entered against them on February 12, 2014.

**B. Evidentiary Hearing on Motion to Vacate Default Judgment**

On August 4, 2014, the Court conducted a hearing on defendants' Motion to Vacate Default Judgment. Plaintiff was represented by counsel. Defendants Moore and Fisher appeared pro se. At the evidentiary hearing, Monica Kerrigan, the legal secretary at plaintiff's counsel's

---

[5] By that same Order, the Court denied plaintiff's Motion for Entry of Default Judgment Against Defendant Behind Closed Doors Touring on the ground that Behind Closed Doors Touring had not been properly served with process. On April 8, 2013, plaintiff filed a Praecipe to Dismiss Defendant Behind Closed Doors Touring from this action.

3

law firm testified. Additionally, defendants Fisher and Moore, as well as Moore's mother, Dazireen Moore ("Mrs. Moore"), testified. Plaintiff's counsel also played segments of the video depositions of Mrs. Moore; Karmen Moore, Moore's sister; Diana Vieira, Fisher's girlfriend; and Amee Hamlin, Fishbone's manager at Silverback. The Court summarizes the relevant testimony and other evidence below.

**(i)    Service on Moore**

A copy of the Summons and Complaint was sent via certified mail and delivered to one of Moore's home on Hatteras Street in Woodland Hills, California, where his mother resided,[6] on February 14, 2012. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 3; Evidentiary Hearing Tr., August 4, 2014, 21-22.) The restricted delivery box on the United States Postal Service return receipt ("green card") for the certified mailing was not checked. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 3.) The green card was signed "Angelo Moore," but Moore denies signing. (Id.; Moore Decl. ¶ 8, Defs.' Mot. to Vacate.) In addition, Moore was touring out of state at the time the delivery was made. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 3; Defs.' Mot. to Vacate, Ex. A, B.) Mrs. Moore was authorized to collect Moore's mail at the Hatteras Street address, but she denies signing Moore's name to the green card. (Evidentiary Hearing Tr., August 4, 2014, 89, 90, 104.) The record reveals that Mrs. Moore's own name was signed on green cards for other mailings pertaining to this case that were addressed to Moore. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 5, 33.) Moore denies having had any knowledge of plaintiff's second lawsuit against him and Fisher until on or about February 14, 2014, after the entry of default judgments against

---

[6] Although Moore was not living at the address to which the Summons and Complaint were sent, Moore owned the home and received almost all of his mail at this home, including his tax returns, credit card statements, bank account statements, and documents from his automobile insurance carrier. (Evidentiary Hearing Tr., August 4, 2014, 73, 74, 103.) Moore also listed the Haterras Street address on multiple driver's license applications, and provided the address to the United States Copyright Office. (Id. at 110-15, 118.)

them. (Moore Decl. ¶ 4, Defs.' Mot. to Vacate; Fisher Decl. ¶ 4, Defs.' Mot. to Vacate.)

**(ii) Service on Fisher**

Plaintiff's affidavit of service and return receipt establish that a copy of the Complaint and Summons was sent to Fisher's home by certified mail and delivered on February 13, 2012. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 2.) The restricted delivery box on the green card for the certified mailing was not checked. (Id.) Fisher's girlfriend, Vieira, who resided with Fisher at his home, signed Fisher's name on the certified mail green card. (Evidentiary Hearing Tr., August 4, 2014, 44, 65, 68.) Vieira was authorized by Fisher to sign for and accept his mail in his absence and placed all accepted mail on the desk in Fisher's apartment for his review. (Id. at 45, 67, 69.) Fisher stated that he knew that there was mail in his apartment from plaintiff's counsel, but testified that he did not open it, and that he thought that the mail pertained to the first lawsuit plaintiff had filed against him. (Id. at 45.) Fisher denies that he had any knowledge of plaintiff's second lawsuit against him until on or about February 14, 2014, after the entry of default judgments against them. (Fisher Decl. ¶ 4, Defs.' Mot. to Vacate.)

**III.   RULE 60(b)(4)**

Defendants Moore and Fisher argue that the default judgments entered against them should be vacated pursuant to Federal Rule of Civil Procedure Rule 60(b)(4) because they were not properly served with the Summons and Complaint, and therefore the Court's judgments are void.[7] Rule 60(b)(4) requires a court "to relieve a party from a final judgment if 'the judgment is void.' A judgment is void within the meaning of Rule 60(b)(4) if the court that rendered it lacked

---

[7] Alternatively, defendants contend that the default judgments should be vacated in the Court's discretion pursuant to Federal Rule of Civil Procedure Rule 60(b)(1), which allows vacatur of default judgments in cases of "mistake, inadvertence, surprise, or excusable neglect." As the Court concludes that service of process was improper and the default judgments must therefore be vacated as a matter of law, the Court need not address defendants' argument pursuant to Rule 60(b)(1).

personal jurisdiction over the defendant." Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008); Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the complaint is, a fortiori, void, and should be set aside."). It is well settled that "[p]roper service of process is [] a prerequisite to personal jurisdiction." Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 492 (3d Cir. 1993). Thus, if the Court concludes that service was not proper, it must set aside the default judgments entered against defendants as a matter of law. See Gold Kist, Inc., 756 F.2d at 19; Arpaio v. Dupre, 527 F. App'x 108, 111 (3d Cir. 2013) ("The balancing test used to evaluate Rule 60(b)(1) motions has no bearing on a district court's jurisdiction over defendants, however — if a district court lacks jurisdiction over a defendant, the judgment is automatically void.") (citing Budget Blinds, 536 F.3d at 258); On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc., 245 F.R.D. 213, 215 (E.D. Pa. 2007) (explaining that "the law is settled that a court lacks discretion under clause (4): if jurisdiction was absent, the court must vacate the judgment as void"). Moreover, "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on the merits." Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir.1951).

 A. **Burden of Proof**

  At the outset, the Court notes that "[n]otice to a defendant that he has been sued does not cure defective service." Grand Entm't Grp., Ltd., 988 F.2d at 492. However, the question of defendants' actual notice of the lawsuit is relevant to who bears the burden of proof in the context of a Rule 60(b)(4) motion seeking vacatur of a default judgment based on improper service of process.

  Generally, plaintiff bears the burden of establishing subject matter and personal

jurisdiction. See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). "However, Rule 60 is silent, and the caselaw is unclear, on which party bears the burden after a judgment has been entered." On Track Transp., Inc., 245 F.R.D. at 223; see Arpaio, 527 F. App'x at 113 n.2 (declining to address the question, but acknowledging circuit court split on issue of who bears the burden of proof in the context of motions to vacate default judgment under Rule 60(b)(4)).

The Second, Seventh, and Ninth Circuits have held that, if a defendant had actual notice of the original action but delayed asserting improper service of process until after the entry of a default judgment, defendant bears the burden of proving that service was improper. Mortgage Elec. Registration Sys., Inc. v. Patock, No. 2006-190, 2009 WL 1421295, at *2 (D.V.I. May 20, 2009) (citing S.E.C. v. Internet Solutions for Business Inc., 509 F.3d 1161, 1165 (9th Cir. 2007); Burda Media, Inc. v. Viertel, 417 F.3d 292, 299 (2d Cir. 2005); Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 400–01 (7th Cir. 1986)); see also Whitehouse v. Rosenbluth Bros., 32 F.R.D. 247, 248 (E.D. Pa. 1962) (ordering defendants to submit evidence supporting their Rule 60(b) motion that Florida federal court that had entered a judgment against them did not have personal jurisdiction over them).

In contrast, the Eleventh Circuit has held that the burden of proof in establishing personal jurisdiction in a motion to vacate default judgment remains on plaintiff. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009). Moreover, "several district courts and at least one commentator have advocated leaving the burden on the plaintiff." On Track Transp., Inc., 245 F.R.D. at 223 (citing Sterling Indus. Corp. v. Tel., Inc., 484 F. Supp. 1294, 1296 (W.D. Mich. 1980); Rockwell Int'l Corp. v. KND Corp., 83 F.R.D. 556, 559 n. 1 (N.D. Tex. 1979); Ariel Waldman, Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate A Default

7

Judgment for Lack of Jurisdiction, 68 U. CHI. L. REV. 521, 536 (2001)).

The burden-shifting scheme adopted by the Second, Seventh, and Ninth Circuit is inapplicable to this case because the evidence presented is insufficient to demonstrate that defendants had actual knowledge of this lawsuit.  See Khaldei v. Kaspiev, No. 10-8328, 2014 WL 2575774, at *7 (S.D.N.Y. June 9, 2014) (observing "that in most cases where courts have shifted the burden to the defendant to disprove service, including Burda, it was conceded or uncontroverted that defendant had knowledge of the underlying suit"), reconsideration denied, No. 10-8328, 2014 WL 3950707 (S.D.N.Y. Aug. 12, 2014).

Defendants Moore and Fisher deny having had any knowledge of plaintiff's second lawsuit against them until on or about February 14, 2014, when they discovered on the Internet that default judgments had been entered against them.  (Moore Decl. ¶ 4, Defs.' Mot. to Vacate; Fisher Decl. ¶ 4, Defs.' Mot to Vacate.)  In response, plaintiff primarily relies on two facts to establish that defendants had actual knowledge of the action: (1) documents mailed by plaintiff's counsel, the Court, and former defendant, The Agency Group, which were sent to defendants Moore and Fisher were not returned by the United States Postal Service as undeliverable; and (2) in 2013, Fisher brought a box sent to him by plaintiff's counsel containing exhibits to plaintiff's Proposed Findings of Fact and Conclusions of Law with respect to the present action to Silverback's office.[8]  (Evidentiary Hearing Tr., August 4, 2014, 59; Pl.'s Resp. to Defs.' Mot. to Vacate, 7.)

It is based on this record that the Court concludes that the evidence presented does not

---

[8] In her Response to the Motion of Defendants Angelo Moore and John Norwood Fisher' to Vacate Default Judgment and Cross Motion to Compel Discovery, plaintiff relied on a series of emails between plaintiff's counsel and Lynanne Wescott, defendants' counsel in the prior action between plaintiff and defendants, in arguing that defendants had actual notice of the action. However, at plaintiff's request at the evidentiary hearing, the Court struck Exhibit 66, containing the series of emails, from the record.  (Evidentiary Hearing Tr., August 4, 2014, 152.)

establish that defendants had actual knowledge of this lawsuit. There is no evidence demonstrating that the mail sent to Moore and Fisher was in fact opened and reviewed by them, such that they would have known that the mailings pertained to the present action, rather than plaintiff's previous action against them. Moreover, with respect to Fisher's delivery of the box of exhibits to Silverback, Fisher testified at the evidentiary hearing that he did not look at the documents, but instead gave them to John Phillips, Chief Executive Officer of Silverback. (Evidentiary Hearing Tr., August 4, 2014, 59-60.) The record reveals that there was a meeting between, Fisher, Hamlin, and Phillips[9] at that time, but neither Fisher, nor Hamlin could recall what was discussed at the meeting. (Hamlin's Depo., Pl.'s Ex. 111; Evidentiary Hearing Tr., August 4, 2014, 59.) Furthermore, Fisher testified that Phillips later told Fisher that the documents pertained to plaintiff's first case against him. (Evidentiary Hearing Tr., August 4, 2014, 60, 61.) Finally, Fisher did not recall telling Moore about the box of exhibits. (Id.)

Because the Court concludes there is insufficient evidence in the record to establish that defendants had actual notice of the present lawsuit, it applies "the general rule that 'the party asserting the validity of service bears the burden of proof on that issue.'" Mortgage Elec. Registration Sys., Inc., 2009 WL 1421295, at *3 (placing burden on plaintiff to prove validity of service where court was not convinced that defendant had actual notice of the lawsuit) (quoting Grand Entm't Group, Ltd.., 988 F.2d at 493). Thus, plaintiff bears the burden of proving valid service of process on defendants.

**B. Service of Process**

Federal Rule of Civil Procedure 4(e) provides that service of process may be made by:

(1) following state law for serving a summons in an action brought in courts of general

---

[9] Phillip's deposition was not taken, nor did he testify at the evidentiary hearing.

> jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

"Except where a waiver has been obtained, the Federal Rules of Civil Procedure do not provide for service of original process by mail, including certified mail." Staudte v. Abrahams, 172 F.R.D. 155, 156 (E.D. Pa. 1997) (citing Fed. R. Civ. P. 4(e)).  As a waiver was not obtained in this case, plaintiff must rely on Pennsylvania law in serving defendants via certified mail.[10]

Under Pennsylvania law, Pennsylvania Rule of Civil Procedure ("Pa. R.C.P.") 403 and 404 as well as 42 Pa. Cons. Stat. Ann. § 5323 detail procedures for service outside the Commonwealth.  See Note to Pa. R.C.P.404 ("Sections 5323 and 5329(2) of the Judicial Code, Pa. Cons. Stat. Ann. §§ 5323, 5329(2), provide additional alternative procedures for service outside the Commonwealth.").  Pa. R.C.P. 403 and 404 provide that service outside Pennsylvania may be made by any competent adult by sending "a copy of the process. . . by any form of mail requiring a receipt signed by the defendant or his authorized agent.  Service is complete upon delivery of the mail."  Furthermore, the Official Note to Pa. R.C.P. 403 states as follows:

> The United States Postal Service provides for restricted delivery mail, which can only be delivered to the addressee or his authorized agent. Rule 403 has been drafted to accommodate the Postal Service procedures with respect to restricted delivery.

---

[10] There is no dispute that defendants were not properly served under California law, which allows service by mail only if "[a] copy of the summons and of the complaint [is] mailed (by first-class mail or airmail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgment . . . and a return envelope, postage prepaid, addressed to the sender." Cal. Civ. Proc. Code § 415.30; see also Reddy v. MedQuist, Inc., No. 06-4410, 2009 WL 2413673, at *8 (D.N.J. Aug. 4, 2009) ("Service of process under this provision [§ 415.30] is only effective when the acknowledgment of receipt forms are completed and returned.").

Thus, under Pennsylvania law, service by mail on an out-of-state defendant under Pa. R.C.P. 403 is not proper unless "accomplished by a form of mail requiring a receipt signed by the defendant or his authorized agent. Such form of mailing includes U.S. Postal Service restricted delivery mail." Grant St. Grp., Inc. v. D & T Ventures, LLC, No. 10-1095, 2011 WL 778438, at *1 (W.D. Pa. Mar. 1, 2011) (citations omitted); Leggett v. Amtrak, No. 90-3007, 1990 WL 182148, at *1 (E.D. Pa. Nov. 26, 1990) (no evidence of proper service where plaintiff did not restrict delivery and there was no evidence that signatory of return receipt was authorized agent of the company); Am. Telecom, Inc. v. First Nat. Commc'ns Network, Inc., No. 99-3795, 2000 WL 714685, at *2 (E.D. Pa. June 2, 2000) (service of process not made in conformity with Pa. R.C.P. 403 where return receipt showed that service was not made by restricted delivery and there was no indication of signatory's authority to accept service of process).[11]  Moreover, "[b]ecause service is the mechanism by which a court obtains jurisdiction over a defendant, the rules governing service of process must be strictly followed." See Hutton v. KDM Transp., Inc., No. 14-3264, 2014 WL 3353237, at *3 (E.D. Pa. July 9, 2014) (citations omitted).

The question of who is an authorized agent for purposes of Pa. R.C.P. 403 is unsettled. However, several courts in this circuit have concluded that an authorized agent for purposes of Pa. R.C.P. 403 must have the authority to accept service of process — as opposed to merely the authority to accept certified mail deliveries. Pearson v. Sonnet Trucking, Inc., No. 09–5917,

---

[11] The Court declines to adopt defendant's narrow reading of Pa. R.C.P. 403 as requiring the use of restricted delivery. Such a requirement would be contrary to the plain language of Pa. R.C.P. 403 and Pa. Cons. Stat. Ann. § 5323(a)(3), which states that process may be service by "any form of mail" requiring a return receipt. Leupold v. Galvin, 1988 LEXIS 3834, 7 (Pa. Super. Ct. Dec. 22, 1988); see Baez v. Rivers, 2007 LEXIS 21, 6 (Phila. Ct. Com. Pl. 2007) ("'Any form of mail' under the above rules does not require a designation of 'restricted delivery' for valid service."); Chapman v. Homecomings Fin. Servs., LLC, No. 07-4553, 2008 WL 1859540, at *1 (E.D. Pa. Apr. 25, 2008) ("[S]ervice by mail upon an out-of-state individual or corporation is not proper unless it is effected by a form of mail requiring a receipt signed by the defendant or his authorized agent, such as U.S. restricted delivery mail.").

2012 WL 279673, at *2 (E.D. Pa. Jan. 30, 2012) (concluding that service was improper under Pa. R.C.P. 403 where plaintiff failed to show that defendant authorized signatory of return receipts as agent for purposes of accepting service of process rather than accepting certified mail deliveries); see also Grant St. Grp., Inc., 2011 WL 778438, at *2 (the authority of signatory of return receipt to accept certified mail does not render that signatory defendant's authorized agent under Rule 403); Leggett, 1990 WL 182148, at *1 (not sufficient evidence to conclude service was proper in conformity with Pa. R.C.P. 403 where nothing in the record demonstrated signatory's "authority to accept service of process on behalf of the corporation").

The Court concludes that plaintiff has failed to establish that defendants were properly served pursuant to Pa. R.C.P. 403 and 404. There is no evidence that the relevant green cards were in fact signed by defendants, who were touring out of the state at the time of delivery, or defendants' authorized agents. See Doughan v. Tutor Time Child Care Sys., Inc., No. 95-7562, 1996 WL 502288, at *3 (E.D. Pa. Aug. 27, 1996) (explaining that the Third Circuit has interpreted Pa. R.C.P. 403 as requiring "proof that the signature on the receipt required by Rule 403 belonged to the defendant or an authorized agent") (citing Lampe v. Xouth, 952 F.2d 697, 701 (3d Cir. 1991) (as amended Feb. 6, 1992)).[12] Nor did plaintiff send the copy of process to

---

[12] 42 Pa. Cons. Stat. Ann. § 5323 also provides, inter alia, that where the Commonwealth authorizes service of process outside the state, the "service, when reasonably calculated to give actual notice, may be made. . .[b]y any form of mail addressed to the person to be served and requiring a signed receipt." See Pa. R.C.P.449 ("Sections 5323 and 5329 of the Judicial Code, 42 Pa.C.S. §§ 5323, 5329, relating to service of process on persons outside the Commonwealth, are not suspended or affected by these [Pa.R.C.P.] rules."). "[P]roof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the tribunal." 42 Pa. Cons. Stat. Ann. § 5322(b). The Court considers this provision in tandem with Pa. R.C.P. 403, see Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 18 (3d Cir. 1985), and concludes that service was improper under § 5323 because the proof of service requirements have not been satisfied. The record reveals that defendants were touring out of the state at the time they were served via certified mail, and thus did not sign the relevant green cards. Nor is there evidence in the record of personal delivery to defendants sufficient to

either defendant via restricted delivery, which would have required either defendants or their authorized agents to sign the relevant green cards. Without the use of restricted delivery or sufficient evidence demonstrating that the signatures on the relevant green cards belonged to defendants or their authorized agents, the Court cannot conclude that service of process was proper.

With respect to Fisher, plaintiff's affidavit of service and return receipt establish that a copy of the process was delivered to Fisher's home on February 13, 2012. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 2.) However, plaintiff did not use restricted delivery in sending service of process via certified mail. (Id.) The record demonstrates that Fisher's girlfriend, Vieira, who resided with Fisher at that time, signed Fisher's name on the green card. (Evidentiary Hearing Tr., August 4, 2014, 44, 65, 68.) Although she was authorized by Fisher to sign for and accept his mail in his absence, the record does not establish that she was authorized to receive service of process on his behalf. See Pearson, 2012 WL 279673, at *2. Thus, the Court concludes that there is insufficient evidence in the record demonstrating that she was defendant's authorized agent for purposes of Pa. R.C.P. 403.

With respect to Moore, the evidence demonstrates that a copy of the process was sent via certified mail and delivered to one of his homes, where his mother resided, on February 14, 2012. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 3; Evidentiary Hearing Tr., August 4, 2014, 21-22.) Plaintiff did not use restricted delivery. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 3.) The green card for the certified mailing was signed "Angelo Moore," however, Moore was touring out of the state at the time a copy of the process was delivered. (Pl.'s Resp. to Defs.' Mot. to Vacate, Ex. 3; Evidentiary Hearing Tr., August 4, 2014, 35.) Although Mrs. Moore was

---

satisfy the tribunal.

authorized to receive her son's mail that was sent to her residence, she denies signing Moore's name to the green card. (Evidentiary Hearing Tr., August 4, 2014, 76, 80, 89, 90, 104.) There is no other evidence in the record demonstrating who may have signed Moore's name to the relevant green card. From this evidence, the Court determines that Moore did not sign the relevant green card, nor is there sufficient evidence in the record establishing that the green card was signed by his authorized agent. Thus, service of process on Moore was improper.

Having determined that service of process on defendants Moore and Fisher was improper, the Court must set aside the default judgments entered against them as a matter of law. See Zokaites Properties, LP v. La Mesa Racing, LLC, No. 11-259, 2012 WL 6015818, at *4 (W.D. Pa. Dec. 3, 2012) ("[R]elief under Rule 60(b)(4), which is at issue here, is not discretionary.").

### IV.    CONCLUSION

For the foregoing reasons, defendants' Motion to Vacate Default Judgment is granted, and the default judgments entered against them on February 12, 2014 are vacated. The Court will conduct a conference by telephone for the purpose of scheduling further proceedings. Failure of defendants to participate in the conference or to comply with any scheduling orders or other court orders will result in the imposition of monetary sanctions.

An appropriate order follows.